**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **LORI QUEEN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**AMERIDIAL, INC. d/b/a FUSION CX,**<br><br>Defendant. | Case No.:<br><br>Hon.: |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Lori Queen, by and through her undersigned counsel, who hereby brings this Collective and Class Action Complaint against Defendant, Ameridial, Inc. d/b/a Fusion CX, and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the North Carolina Wage and Hour Act, N.C. Gen. Stat. 95-25.1, *et seq.* ("North Carolina Wage Act") and common law.

2. Defendant is a business process outsourcing (BPO) company that operates a handful of contact centers across the United States.

3. To staff its contact center and provide service to its customers, Defendant employs hourly call center employees thousands of customer service agents with varying job titles (collectively referred to as Customer Service Representatives, or "CSRs"), in its brick-and-mortar

offices as well as in remote call center settings across the United States.

4. Defendant classifies its CSRs as non-exempt and tasks them with the primary job duty of providing over-the-phone customer service.

5. Regardless of the specific job title, all CSRs: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing call center based assistance to Defendant's existing and prospective customers.

6. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff and Defendant's CSRs, are homogenous, and it issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call-ready activities. [1] ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

7. Defendant violated the FLSA, North Carolina Wage Act, and common law by systematically failing to compensate their CSRs for work tasks completed before and during their scheduled shifts, when they were not logged into Defendant's timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked and in

[1] DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers*

workweeks in which CSRs worked overtime, for straight time.

8. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to the start of their scheduled shifts and when returning from their meal periods.

9. Plaintiff seeks a declaration that her rights and the rights of the putative FLSA Collective and Class members were violated, and a judgment awarding unpaid wages, liquidated damages, attorneys' fees, and costs, along with all other relief to which they are entitled. Plaintiff further seeks such remedies to make the workers whole for the harm they suffered and to ensure that Defendant does not subject future employees to the same unlawful practices.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under the FLSA, 29 U.S.C. §§ 201, *et seq*.

11. Additionally, this Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

12. Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

13. Defendant's employees, including Plaintiff, engage in interstate commerce – including, but not limited to utilizing telephone lines and internet – and therefore, they are also covered by the FLSA on an individual basis.

14. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

15. This Court has personal jurisdiction over Defendant because Defendant conduct business within this District and maintains its principal place of business in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business within this District.

**PARTIES**

17. Plaintiff is a resident of North Carolina.

18. Plaintiff worked for Defendant as a "Color Medical Agent" at its Spindale, North Carolina office location from approximately January 2023 through October 2025.

19. Plaintiff's most recent hourly rate was $16.00 per hour.

20. Plaintiff executed her Consent to Join form, attached hereto as **Exhibit A**.

21. Defendant is an Ohio corporation with its headquarters located in North Canton, OH.

22. Defendant operates brick and mortar call centers in at least seven (7) United States locations: Canton, OH; Spindale, NC; Norcross, GA; Boynton Beach, FL; Bethlehem, PA; Houston, TX and Dallas, TX.

23. Defendant's registered office for service is Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, OH 43215.

## GENERAL ALLEGATIONS

24. Throughout their employment with Defendant, Plaintiff and the other CSRs were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

25. Defendant employs thousands of CSRs, providing customer service and support to Defendant's customers throughout the United States.

26. Defendant compensated its CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

27. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each CSR, including but not limited to: offer letters, paystubs, and/or other payroll records.

28. Plaintiff and Defendant's CSRs typically worked five (5) days each week and forty (40) or more hours per week.

29. There were many instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

30. Defendant provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day and when returning from their meal breaks; the importance of attendance and schedule expectations; and Defendant's policies.

31. The training that all of Defendant's CSRs received was substantially, if not entirely, the same and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

32. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

33. To the extent that Defendant may have had written policies that required their employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

34. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

35. Defendant issued work schedules to Plaintiff and other similarly situated CSRs that strictly dictated Defendant's work expectations, specifically "phone ready" requirements.

36. More specifically, Defendant instructed Plaintiff and other similarly situated CSRs to be "phone ready" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required Defendant's CSRs to load and log into their essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field Defendant's customers' inquiries the moment their shifts began.

37. During the boot-up and login process, Defendant's CSRs sometimes experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

38. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-, and post-shift work off-the-clock.

39. These policies and procedures, which were utilized for purposes of evaluating CSR job performance, effectively enforced the "phone ready" policy and required CSRs to perform off-the-clock work.

40. Pursuant to these policies and procedures, Defendant's CSRs, including Plaintiff, faced warnings, coaching, poor performance evaluations, performance improvement plans (PIPs), other disciplinary action, and termination for failing to be "phone ready."

41. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

42. The pre- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging in and safely shitting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

43. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with its CSRs.

44. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

45. Defendant knew or should have known that the FLSA requires employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a); *see also* 43 P.S. § 333.104.

46. Defendant also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than 40 hours in a workweek to be paid overtime at one and one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

47. Nevertheless, Defendant failed to pay Plaintiff and all other current and former CSRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

48. Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

49. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

50. Defendant was aware that Plaintiff and the CSRs worked more than 40 hours in multiple workweeks because Defendant's own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendant issued payment.

51. Because Defendant required its CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A. Unpaid Pre-Shift Boot-Up and Call Ready Work**

52. Defendant's CSRs were trained and required to start up and log into Defendant's computer network and software programs in order to access the information necessary to perform

their job duties and be considered "phone ready" *before* "punching into" Defendant's timekeeping system.

53. The pre-shift boot-up and login process generally consisted of the following steps:

a. Turning on or waking up the computer (Windows);

b. Logging into Windows with a username and password;

c. Connecting to Defendants' virtual private network (VPN) using two-factor authentication;

d. Launching Microsoft Outlook and Teams;

e. Logging in to Opus and ZenDesk;

f. Logging in to Defendant's phone system and CRM (Avaya);

g. Logging in to Defendant's timekeeping software (e.g. Dayforce).

54. The boot-up and login process described above took approximately fifteen (15) to twenty (20) minutes per shift.

55. If CSRs arrived immediately prior to their scheduled shifts, they were in danger of discipline for being late because they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and Defendant would consider them tardy.

56. Defendant expected Plaintiff and all other CSRs to respond to customer inquiries and handle calls for the entirety of their scheduled shifts. This expectation, coupled with Defendant's attendance and adherence policies, necessarily required CSRs to perform work off-the-clock in order to be fully prepared and "phone ready" at the start of their shifts.

57. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting up and logging in directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

58. Despite knowing Plaintiff and all other CSRs perform this pre-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**B. Unpaid Post-Shift Off-The-Clock Work**

59. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

60. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from five (5) to ten (10) minutes per shift.

61. Defendant's CSRs are not paid for their post-shift off-the-clock work.

62. The post-shift off-the-clock work Plaintiff and other CSRs perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

63. Despite knowing Plaintiff and all other CSRs perform this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

64. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs boot up and log into their computers each day, and the time they shut down each day.

65. Because Defendant required its CSRs to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the

total amount of time CSRs spend working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

66. Plaintiff completed these pre- and post-shift work activities before and after every shift. Consequently, Plaintiff's uncompensated pre- and post-shift work constituted overtime work every week he worked his standard work schedule as described above.

67. Because Plaintiff and the other CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre- and post-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

68. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendant at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

69. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

70. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

71. All of the work Plaintiff and the proposed FLSA Collective performed was

assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

72. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

73. As part of their regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for Defendant's benefit.

74. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

75. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the CSRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying their CSRs for all straight-time and overtime wages in violation of the FLSA); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

76. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records.

77. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

78. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendant in North Carolina at any time in the last three years.*

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

79. *Numerosity:* The members of the Rule 23 North Carolina Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are dozens, if not hundreds, of Rule 23 North Carolina Class members, each of whom should be easy to identify from Defendants' computer systems and personnel and payroll records.

80. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 North Carolina Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre- and post-shift time the Rule 23 North Carolina Class members spent on startup and login activities each shift is compensable;

b. Whether the Rule 23 North Carolina Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member regular wages or minimum wages for each non-overtime hour worked;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member overtime wages for each overtime hour worked;

e. The proper measure of damages sustained by the Rule 23 North Carolina Class.

81. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 North Carolina Class members in that Plaintiff and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

82. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and Plaintiff retained national counsel who are qualified and experienced in

the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

83. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens, or hundreds, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 North Carolina Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

84. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel are not aware of any unusual difficulties in this case and Defendant and its corporate client have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues to be resolved with relative ease.

85. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v, Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

86. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate with respect to the Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

87. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> *All current and former CSRs who work or have worked for Defendant anywhere in the United States during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

88. *Numerosity:* The members of the Rule 23 Nationwide Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members, each of whom should be easy to identify from Defendants' computer systems and personnel and payroll records.

89. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre- and post-shift time the Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or resulted in Defendant being unjustly enriched; and

c. The proper measure of damages sustained by the Rule 23 Nationwide Class.

90. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Nationwide Class members in that Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

91. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

92. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23

Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

93. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant maintains a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

94. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

95. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES**

96. Plaintiff re-alleges and incorporates all previous paragraphs herein.

97. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

98. Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

99. At all times relevant to this action, Plaintiff and the FLSA Collective members were “employees” of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

100. At all times relevant to this action, Defendant “suffered or permitted” Plaintiff and the FLSA Collective members to work and thus “employed” them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

101. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

102. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

103. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

104. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

105. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over 40 hours per week.

106. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

107. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

108. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

109. Defendant's violations of the FLSA were knowing and willful.

110. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

111. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II
## RULE 23 NORTH CAROLINA CLASS ACTION
## VIOLATION OF THE NORTH CAROLINA WAGE ACT,
## N.C. GEN. STAT. 95-25.1, *et seq.*

112. Plaintiff re-alleges and incorporates all previous paragraphs herein.

113. At all times relevant to this action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*, and Plaintiff and the Rule 23 North Carolina Class members were or are employees entitled to the Act's protections.

114. The North Carolina Wage Act mandates that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C.G.S. § 95-25.6.

115. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages on their regular paydays.

116. In particular, Defendant, in violation of N.C.G.S. § 95-25.6, failed to pay all straight time wages for unpaid work during pay periods without overtime, also known as "gap time," owed to Plaintiff and the North Carolina Class.

117. Defendant violated the North Carolina Wage Act by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class members for the time spent on the work activities described in this Complaint.

118. Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff and the North Carolina Class members have been deprived of compensation due and owing.

119. Defendant's failure to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages, under N.C.G.S. §§ 95-25.22 (a1).

120. As a result of Defendant's unlawful acts, Plaintiff and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S. §§ 95-25.6, 95-25.22(a), (a1), and (d).

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

121. Plaintiff re-alleges and incorporates all previous paragraphs herein.

122. At all times relevant to this action, Defendant had binding and valid contracts with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

123. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

124. For example, Defendant offered to compensate Plaintiff at a wage certain per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

125. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

126. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

127. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

128. By not paying Plaintiff and every other Rule 23 Nationwide Class member the

agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

129. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

130. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

131. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

132. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

133. Plaintiff re-alleges and incorporates all previous paragraphs herein.

134. This Count is pled in the alternative to Count III *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

135. At all times relevant to this action, Defendant promised Plaintiff and every other

Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

136. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

137. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

138. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

139. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

140. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

141. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

142. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

143. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

144. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's claim under the North Carolina Wage Act (Count II);

d. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

e. An Order designating Plaintiff to act as the representative of the FLSA Collective, Rule 23 North Carolina Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f. An Order declaring that Defendant violated the FLSA and its attendant regulations as set forth above;

g. An Order declaring that Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant violated the North Carolina Wage Act as cited herein;

i. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

j. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: April 6, 2026

Respectfully Submitted,

*/s/ Paulina R. Kennedy*

Paulina R. Kennedy (P84790)
Kevin J. Stoops (P64371)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
pkennedy@sommerspc.com
kstoops@sommerspc.com
**pro hac vice forthcoming*